[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION de DEFENDANT'S MOTION FOR VISITATION (#132)
The parties' marriage was dissolved in this court on January 28, 1991 at which time the plaintiff mother was awarded custody of their minor son, Michael, who was born on August 7, 1987. The defendant father was awarded visitation.
On April 30, 1990, the plaintiff obtained an ex parte restraining order suspending the defendant's visitation rights (Docket #FA-90-095940) based on allegations that the child had been sexually molested while visiting his father. On May 7, 1990 the defendant was given supervised visitation in the presence of his mother, and at no time was the child to be left alone in the presence of any male. The court also appointed counsel for the minor who has continued her representation of the child in both files. On October 1, 1990, the court granted the defendant's motion to delete the requirements that the defendant's mother supervise visitation.
On June 25, 1991, the court entered an order suspending the defendant's visitation as part of a continuing proceeding which was commenced by the plaintiff's application for a restraining order dated June 14, 1991 based on new allegations of sexual abuse CT Page 3678 of the child by his father. A subsequent order was entered authorizing David M. Mantell, PhD. to conduct an evaluation of the minor child. Supervised visitations were resumed during the Christmas season.
Dr. Cheryl Outland, M.D., a pediatrician employed by St. Mary's Hospital as a full time member of the Waterbury Regional Department of Pediatrics, examined Michael on June 14, 1991 and found a 22 millimeter dilation of the boy's anus and a small crevice that appeared to the doctor to be a laceration. The doctor stated such condition was not normal but was consistent with penetration by an adult penis and the doctor concluded that, based on her experience, observations, and the physical examination that Michael had been sexually assaulted. Further, the witness stated the dilation was larger than finger size and repeated penetration was needed to cause such a dilation. The court concludes that the boy has been sexually molested by some male. (Plaintiff's Exhibit A, Medical Evaluation.)
The boy has stated on several occasions that his father "puts the penis in the butt; he peed in my butt".
The court ordered an evaluation of the child which has been performed by Dr. David M. Mantell, Ph.D., a licensed clinical psychologist, who is currently Associate Clinical Professor of Psychiatry at U. Conn. Medical School, (c.f. Defendant's Exhibit #5). Dr. Mantell conducted many interviews with Michael and with his parents. All interviews were video taped, (Plaintiff's Exhibits B, C, and D). Under date of January 8, 1992 Dr. Mantell prepared a very detailed report of his findings, (Defendant's Exhibit #4). As part of his analysis, he referred the hospital records and the transcript of the court's hearing held on July 12, 1991 containing the testimony of Dr. Outland to Dr. Elaine F. Yordan, M.D., Assistant Professor of Pediatrics, U. Conn. School of Medicine for her review and opinion which she provided in her letter dated January 3, 1992 addressed to Dr. Mantell, and which is part of Defendant's Exhibit #4. To quote Dr. Yordan:
 "If there was no stool in the rectal ampulla on June 14, 1991, I would consider 22 millimeters of anal dilation to be a specific finding strongly suggestive of sexual abuse."
 "In regard to what has been variously termed in the documents which you sent me as the anal `crevice', anal `laceration' and anal `fissures', I have some difficulty understanding the physical description of the anal CT Page 3679 laceration on page 25 of the court transcript. After carefully reading the statements on page 25 of the court transcript, one conclusion that I draw is that a 1 millimeter by 2 millimeter laceration was present at the anal orifice at 5 o'clock extending 1 1/2 inches to 2 inches into the rectum. If this were the case, this finding raises very serious concerns.
 In my opinion, it is very difficult to definitively diagnose sexual abuse on the basis of anal and perianal abnormalities. Certainly, the finding of anal and perianal abnormalities raises concern of possible anal sexual assault. Strong consideration and evaluation of all the circumstances surrounding the case is required, in addition to the medical evaluation, so that protection from further sexual abuse can be provided for the alleged child victim."
(emphasis added)
From Dr. Yordan's opinion just quoted, Dr. Mantell concludes as follows:
 11. Dr. Yordan's review of the medical data indicates that the laboratory and physical examinations that led to the diagnoses of Chlamydia and possible anal sexual assault are unreliable. Dr. Yordan's discussion indicates that the child may not have had chlamydia and that a conclusion of anal sexual assault is not warranted by the data."
He then concludes:
 "My review of available documents aided by my own examinations and behavioral analyses has not produced data consistent with child sexual abuse."
What Dr. Mantell does find is that Michael's mother has repeatedly discussed the allegations of sexual abuse in the presence of the CT Page 3680 child; that the social worker attached to St. Mary's Hospital prompted the child; that Michael's responses are repetitive and static using the same vocabulary over and over which is inconsistent with experienced events that the child would elaborate upon. Michael has slept in the bed of each parent in the past which can cause confusion in the child; as a bright child he finds amusement in reciting words having sexual meaning; that penis in the butt did not originate with the child but rather with the mother; that none of the behaviors exhibited by the child are specifically associated with sexual abuse e.g. nightmares, and aggressive behaviors that are better explained by parental conflict; that Michael displayed no fear of either his father or of his mother; that Michael never spontaneously made statements regarding sexual victimization by anyone; and the history of sexual abuse that the maternal grandfather visited upon the plaintiff and related allegations involving plaintiff's extended family is cause for concern because the plaintiff considered moving in her parents.
Dr. Mantell prepared an addendum dated February 27, 1992 (defendant's Exhibit #6) wherein he concludes that there is no reliable or validated evidence to indicate that sexual abuse occurred.
This conclusion by Dr. Mantell is not consistent with the physical findings of Dr. Outland who examined the child on June 14, 1991.
Dr. Outland was recalled as a rebuttal witness. She testified that no stool was present during her examination of Michael, that Michael had no chronic constipation and that her conclusion was not inconsistent with Dr. Yordan's observations.
Dr. Mantell's assumption, based on Dr. Yordan's letter to him, that sexual abuse via anal penetration did not occur is not warranted in light of the physical evidence that it did occur. Dr. Outland's findings and conclusion are not challenged by any credible evidence. The court concludes that someone had been molesting Michael prior to June 14, 1991.
Dr. James J. Dipisa, Ph.D., the staff psychologist also examined Michael at St. Mary's Hospital on June 14, 1991 at which time, during the interview, Michael said "Daddy puts his penis in my butt" and that his father gets into bed with him with "only his skin on". He testified that he found the boy able to distinguish the truth from a lie, and that the boy exhibited behavior using dolls, drawings and comments consistent with the responses expected from a child who had been sexually abused. Ms. Stephanie Miskell, who was present during Dr. Dipisa's interview of Michael, confirmed his observations. Michael said to them that CT Page 3681 "his father sat on the side of a bed and put his penis in his (Michael's) butt", (Plaintiff's Exhibit A). Finally, the boy said it happened "the last time" with his father.
The court finds that there is sufficient evidence to grant the defendant's motion for visitation weekly provided such visitations are supervised. If the paternal grandmother is available and willing to assume the responsibility, such visits with the defendant shall be under her personal supervision. The child Michael is not to be left alone with the defendant until further court order.
This order also supercedes the restraining order entered July 12, 1991.
File #095940 is ordered closed and sealed. All future filing shall be made in #091248 which is also sealed.
So ordered.
HARRIGAN, J. CT Page 3682
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 3683